**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RUBEN HERNANDEZ,<br><br>    Plaintiff,<br><br>  vs.<br><br>CALIFORNIA RECONVEYANCE<br>COMPANY, et al,<br><br>    Defendants.<br>_____/ | CASE NO. CV F 09-0251 LJO DLB<br><br>**ORDER ON DEFENDANTS' F.R.Civ.P.<br>12(b)(6) MOTION TO DISMISS**<br>(Doc. 7.) |

**INTRODUCTION**

Defendants JPMorgan Chase Bank, N.A. ("JPMorgan")[1] and California Reconveyance Company ("CRC") seek to dismiss plaintiff RUBEN Hernandez' ("Mr. Hernandez'") unfair debt collection and related real estate foreclosure claims as non-cognizable and lacking sufficient facts for requested relief. Based on Mr. Hernandez' inability to prevail on his claims as pled, this Court DISMISSES Mr. Hernandez' claims with leave to amend and need not entertain further briefing given the myriad of deficiencies of Mr. Hernandez' operative complaint. "A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). This Court VACATES the April 14, 2009 hearing and ORDERS Mr. Hernandez, no later than March 3, 2009, to file and serve: (1) a first amended complaint to comply with federal pleading requirements and this Court's Local Rules; or (2) a statement that he

---

[1] JPMorgan proceeds as acquirer of certain assets and liabilities of defendant Washington Mutual Bank ("WaMu") from the Federal Deposit Insurance Corporation acting as receiver.

abandons his claims. This Court gives Mr. Hernandez a short period of time to respond to this order because this Court suspects that the court system is being used solely for delay or other improper purposes.

### BACKGROUND

#### Mr. Hernandez' Underlying Loan

Mr. Hernandez obtained a $310,500 mortgage loan ("loan") secured by a deed of trust ("DOT") which encumbers his Bakersfield residence ("property"). The DOT was recorded on March 24, 2005[2] and identifies Long Beach Mortgage Company ("LBMC") as the lender, beneficiary and trustee.

Mr. Hernandez defaulted on the loan, and a Notice of Default and Election to Sell Under Deed of Trust ("default notice") was recorded on June 24, 2008. The default notice indicates that as of June 23, 2008, the amount in arrears is $40,228.30.

CRC was named the new trustee for the DOT in a Substitution of Trustee recorded on October 14, 2008. A Notice of Trustee's Sale for the DOT was recorded on October 14, 2008.

Deutsche Bank National Trust Company ("Deutsche Bank") was assigned all beneficial interest under the DOT pursuant to an Assignment of Deed of Trust recorded on November 10, 2008.

Mr. Hernandez failed to reinstate the loan, and the property was sold at a trustee's sale to Deutsche Bank on November 3, 2008. A Trustee's Deed Upon Sale was recorded on November 10, 2008.

#### Mr. Hernandez' Claims

Mr. Hernandez' operative original complaint ("complaint") was filed on October 30, 2008[3] and alleges that:

1. WaMu is not: (a) the holder of the note identified in the DOT; (b) in possession of the "note properly endorsed to it"; and (c) entitled by state law to initiate foreclosure;

2. WaMu "has no present right to initiate foreclosure" and lacks the right to direct CRC to

---

[2] All documents regarding Mr. Hernandez' loans and default were recorded in the Kern County Recorder's Office.

[3] Mr. Hernandez filed his complaint in Kern County Superior Court, and JPMorgan and CRC removed the action to this Court.

foreclose and sell the property;

3. CRC has refused to suspend the property sale and to provide proof of WaMu's right to initiate foreclosure;

4. Defendants[4] have engaged "in a pattern and practice of utilizing the non-judicial foreclosure procedures of this State to foreclose on properties when they do not, in fact, have the right to do so, knowing that the property owners affected do not have the knowledge and means to contest the right of said Defendants to do so";

5. Defendants have used the United States mail to further a conspiracy to unlawfully collect on negotiable instruments and assuming that they have the right to foreclose under the note, "to profit from those actions in amounts greater than their rights under the note to do so";

6. Defendants are not in possession of the note and "were proceeding to foreclose non-judicially without right under the law";

7. Defendants "added costs and charges to the payoff amount of the note that were not justified"; and

8. Defendants misrepresented facts to force Mr. Hernandez to pay large sums of money to defendants to which they were not entitled or to abandon Mr. Hernandez' property to foreclosure sale.

The complaint alleges:

1. A (first) unfair debt collection practices cause of action that defendants "violated provisions of California's Rosenthal Fair Debt Collection Practices Act, including but not limited to Civil Code § 1788(e) and (f), and the Federal Fair Debt Collections Act, 15 U.S.C., Title 41, Subchap. V, §§ 1692, et seq, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617";

2. A (second) predatory lending practices cause of action that WaMu "is subject to defenses that would have been available" against LBMC, the initial lender identified in the DOT,

---

[4] The complaint appears to reference WaMu and CRC collectively as "Defendants."

3

and that LBMC engaged in predatory lending practices in violation of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1637, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, Regulation Z, 12 C.F.R. 226, and the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41-58, "the specifics of which are unknown"; and

3. A (third) RICO violations cause of action that defendants participated "in a scheme of racketeering as that term is defined in the Federal Racketeer Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. §§ 1961 et seq." and have committed RICO violations, including attempts to collect unlawful debts, mail fraud, prohibited interference with commerce, robbery, extortion and fraud in the sale of securities.

The complaint seeks to enjoin foreclosure and sale of the property, monetary, statutory and treble damages, and attorney fees.

## DISCUSSION

### Pleading And F.R.Civ.P. 12(b)(6) Motion Standards

JPMorgan and CRC fault the complaint's lack of specific facts to relate to Mr. Hernandez or his loan and to identify specific portions of the various statutes which Mr. Hernandez claims were violated and conduct resulting in claimed violations. JPMorgan and CRC characterize the complaint as "repetitive, boilerplate jargon that Defendants lacked the authority to commence foreclosure because neither entity was 'the holder of the Note' identified in the deed of trust."

F.R.Civ.P. 8 requires a complaint to contain "a short plain statement of the claim showing that the pleader is entitled to relief." To comply with F.R.Civ.P. 8, a plaintiff "must plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

1 the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco
2 Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where
3 there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a
4 cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling
5 v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). F.R.Civ.P. 12(b)(6) dismissal is proper
6 when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief."
7 *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

8       In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light
9 most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine
10 whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty
11 Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal
12 conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in
13 the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th
14 Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines
15 that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc.
16 v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a
17 Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to
18 provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a
19 formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127
20 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

21       For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the
22 complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).
23 Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d
24 at 1162, n. 2. A court may also consider "documents 'whose contents are alleged in a complaint and
25 whose authenticity no party questions, but which are not physically attached to the [plaintiff's]
26 pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (quoting *Branch v. Tunnell*, 14 F.3d
27 449, 454 (9th Cir. 1994)). A "court may disregard allegations in the complaint if contradicted by facts
28 established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823

F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). As such, this Court may consider Mr. Hernandez' pertinent loan documents.

**Unfair Debt Collection Practices Claim – Non-Judicial Foreclosure Under California Law**

JPMorgan and CRC argue that there is no basis for an unfair debt collection claim in that the foreclosure was initiated properly by CRC, as a substitute trustee under the DOT, and by Deutsche Bank, as assignee of all beneficial interest under the DOT. JPMorgan and CRC note that non-judicial foreclosure of the property is proper under California law.

"Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

JPMorgan and CRC note that WaMu, as beneficiary under the DOT, was authorized to instruct the foreclosure trustee to commence foreclosure and that when WaMu assigned the beneficial interest to Deutsche Bank, Deutsche Bank had such authority. JPMorgan and CRC point out that the DOT permitted appointment of a substitute trustee by which CRC was substituted as trustee with authority to enforce the DOT.

JPMorgan and CRC correctly explain that if a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under California Civil Code sections 2924-2924i:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

1  *Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994).

2  Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

As such, CRC, as substitute trustee under the DOT, was authorized to initiate foreclosure given the June 24, 2008 default notice indicating Mr. Hernandez' arrears on the loan and the DOT's power of sale provision. No requirement exists under the statutory framework to produce the original note to initiate non-judicial foreclosure. The complaint lacks alleged violation of applicable law or Mr. Hernandez' loan agreements to support a claim for unfair debt collection practices.

Moreover, the complaint fails to satisfy F.R.Civ.P. 8 to plead specific elements of a statutory claim or violation to entitle Mr. Hernandez to requested relief. The complaint fails to demonstrate with facts that JPMorgan and CRC are prohibited to proceed with non-judicial foreclosure or violated statutes or other requirements to prevent non-judicial foreclosure. The complaint alleges unsubstantiated, sweeping legal conclusions.

The complaint lacks allegations of harassment or abuse to violate 15 U.S.C. § 1692d, false or misleading representations to violate 15 U.S.C. §1692e, or unfair practices to violate 15 U.S.C. § 1692f. An absence of allegations to violate federal Fair Debt Collections Act results in failure of Mr. Hernandez' claim of violation of the California Fair Debt Collection Practices Act, Cal. Civil Code, § 1788, et seq. The unfair debt collection practices claim's reference to the Real Estate Settlement Procedures Act ("RESPA") is unsupported in the absence of allegations of "improper kickbacks" and a private right of action under RESPA disclosure requirements. *See Bloom v. Martin*, 865 F.Supp. 1377, 1384-1385 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (1996). Moreover, a RESPA claim is susceptible to the one-year limitations period of 12 U.S.C. § 2614(a) in that Mr. Hernandez filed his complaint more than three years after the March 2005 loan transaction.

Mr. Hernandez' unfair debt collection practices claim is not viable and fails as an unsubstantiated attempt to delay non-judicial foreclosure or other improper purpose.

### Predatory Lending Practices Claim

JPMorgan and CRC attack the complaint's predatory lending practices claim for merely referring to statutes without an allegation of a predatory practice. JPMorgan and CRC are correct that the predatory lending practices claims is pled inadequately given that "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Associated Gen. Contrs. of America v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (1998).

JPMorgan and CRC argue that the complaint fails to allege a HOEPA claim which must arise from "other than a residential mortgage transaction." Under 15 U.S.C. § 1602(aa), a HOEPA claim applies to:

> . . . a consumer credit transaction that is secured by the consumer's principal dwelling, **other than a residential mortgage transaction**, a reverse mortgage transaction, or a transaction under an open end credit plan, if–
>
> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> (B) the total points and fees payable by the consumer at or before closing will exceed the greater of--
>
> (i) 8 percent of the total loan amount; or
>
> (ii) $400. (Bold added.)

JPMorgan and CRC correctly note that Mr. Hernandez' loan was a residential mortgage transaction to bar a HOEPA claim.

JPMorgan and CRC further argue that the complaint "fails to provide a single allegation of any practice of Defendants that may be considered predatory under TILA or any other statute." JPMorgan and CRC challenge a TILA claim as barred by the one-year limitations period of 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation." The limitations period runs from the date of the consummation of the transaction which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). Mr.

Hernandez' loan was consummated in March 2005, more than three years before he pursued this action to render a TILA claim time barred.

Similar to the fate of other statutory claims, a FTC Act claim fails in the absence of facts to support a violation. The record reveals that the DOT's power of sale clause was properly invoked to vitiate a predatory lending practices claim. This Court surmises that the complaint was filed to attempt to delay non-judicial foreclosure or for other improper purpose, especially given the complaint's acknowledgment of "unknown" specifics of predatory lending practices.

## RICO Claim

JPMorgan and CRC fault Mr. Hernandez' RICO claim for lacking facts of an "enterprise," "racketeering activity," or a "pattern of racketeering activity."

Subsection (c) of 18 U.S.C. § 1962 ("section 1962") provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

A violation of § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985). A "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275.

For a RICO claim, an alleged "enterprise" requires an independent legal entity such as a corporation or an "association in fact" of individuals. 18 U.S.C. § 1961(4). The United States Supreme Court has explained:

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C. § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.

*United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981).

"Racketeering activity" is any act indictable under several provisions of Title 18 of the United States Code. *Rothman v. Vetter Park Management*, 912 F.2d 315, 316 (9th Cir. 1990); *see* 18 U.S.C. § 1961. "Racketeering activity" also includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).

Subsection (5) of 18 U.S.C. § 1961("section 1961") defines "pattern of racketeering activity" to require "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." Section 1961"does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *H.J., Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893 (1989). Section 1961(5) "says of the phrase 'pattern of racketeering activity' only that it 'requires at least two acts of racketeering activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.' It thus places an outer limit on the concept of a pattern of racketeering activity that is broad indeed." *H.J, Inc.*, 492 U.S. at 237, 109 S.Ct. 2893.

"Section 1961(5) concerns only the minimum *number* of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts involved." *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900 (italics in original). A pattern in not formed by "sporadic activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. The term pattern requires a relationship between predicates and the threat of continuing activity. *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900. The factor of continuity plus relationship combines to produce a pattern. *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J, Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900.

JPMorgan and CRC note the absence of allegations of a wrongful enterprise attributable to them. JPMorgan and CRC argue that the complaint fails to establish RICO elements in the absence of allegations of an activity to constitute a "pattern" or "racketeering activity."

JPMorgan and CRC are correct. The complaint lacks sufficient allegations that JPMorgan and CRC engaged in an enterprise or two or more criminal acts to support a pattern of racketeering activity under sections 1961(5) and 1962. The complaint fails to allege that Mr. Hernandez' loan constitutes an unlawful debt, that is, an illegal gambling debt or debt with an interest rate "at least twice the enforceable rate." *Reidy v. Meritor Sav., F.S.B.,* 705 F.Supp. 39, 40 (D. D.C. 1989).

The complaint further fails to satisfy the damages requirement for a RICO claim. The "plain language" of pertinent RICO provisions "leads us to conclude that a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.,* 981 F.2d 429, 437 (9th Cir. 1992), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2336 (1993).

The complaint's RICO claim is vitiated in the absence of sufficient facts of an enterprise, racketeering activity, pattern of racketeering activity, unlawful debt and recoverable damages. The complaint alleges no injury to Mr. Hernandez' business or property by a racketeering activity or sufficiently alleged violation identified under RICO. The complaint is devoid of facts to satisfy sections 1961 and 1962.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES without prejudice this action;
2. ORDERS Mr. Hernandez, no later than March 3, 2009, to file and serve: (a) a first amended complaint to comply with federal pleading requirements and this Court's Local Rules; or (b) a statement that Mr. Hernandez abandons his claims. If the first amended complaint is either filed untimely or lacks a cognizable claim and/or sufficient facts for requested relief, this Court will dismiss this action without prejudice. Due to this Court's concerns about delay and/or other improper tactics, this action is on a fast track for resolution; and

3. **ADMONISHES Mr. Hernandez that failure to comply with this order will result in dismissal of this action.**

IT IS SO ORDERED.

Dated:   February 23, 2009                    /s/ Lawrence J. O'Neill
                                              UNITED STATES DISTRICT JUDGE